IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Auto-Owners Insurance Company, ) | |
| ) | C/A No. 2:09-CV-00802-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **FINDINGS OF FACT &** |
| Madison at Park West Property Owners ) | **CONCLUSIONS OF LAW** |
| Association, Inc.; Madison at Park West ) | |
| Tarragon LLC; Northland Madison at ) | |
| Park West LLC; Northland Properties ) | |
| Management LLC; Northland Investment ) | |
| Corporation; Elizabeth O'Donnell; ) | |
| Mary Ann Neaton; and John Buiel, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I.   BACKGROUND

The insurance coverage issues in this declaratory judgment suit arise from a class action filed in South Carolina State Court (the "State Action") by Defendants Elizabeth O'Donnell, Mary Ann Neaton and John Buiel (the "Homeowners" or "Homeowner Defendants"), on behalf of themselves and all others similarly situated. Compl. ¶ 21, ECF No. 1; see also State Ct. Am. Compl., ECF No. 1-4 at 2. The Homeowner Defendants own individual condominium units in the Madison at Park West condominium complex in Mount Pleasant, South Carolina (the "Property"). The Property was an apartment complex until on or about November 10, 2005, when Defendant Madison at Park West Tarragon, LLC ("Tarragon") purchased it for the purpose of converting it into condominiums. See Stipulations of Fact ¶¶ 1, 8, ECF No. 70. Tarragon owned the Property (and several individual condominium units at the Property) until on or about December 28, 2007, when Tarragon was

purchased by Northland Fund II, L.P. (the "Northland Fund"), an affiliate of Defendant Northland Investment Corporation. Id. at ¶¶ 11–12.

Defendant Madison at Park West Property Owners Association, Inc. (the "POA"), a corporation registered in South Carolina, was formed in 2006 pursuant to South Carolina's Horizontal Property Act, S.C. Code Ann. § 27-31-10 et seq.[1] The POA's Master Deed, which was recorded on September 7, 2006 in the Register Mesne Conveyance Office for the County of Charleston, South Carolina, provides that, "[e]xcept as specifically provided to the contrary herein, the [POA] will maintain the Common Elements in first class condition in accordance with proper maintenance procedures . . . and will enforce all warranties with respect to the Common Elements . . . the [POA] will [also] repair or replace all parts of the Common Elements as necessary." Master Deed § 7.1, ECF No. 40-3; see also Stipulations of Fact ¶ 5, ECF No. 70. In total, there are 244 individual condominium units within the Property; the individual owners of the units own the Property's common elements "as tenants-in-common" in varying percentages appurtenant to each

---

[1] The Horizontal Property Act provides a means for owning and regulating property, in particular condominium complexes: "once property is submitted to a condominium horizontal property regime, individual apartments may be owned, conveyed and encumbered independently of other apartments, subject to the same general principles of law governing real property." Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp., 628 S.E.2d 902, 912–13 (S.C. Ct. App. 2006) (citing S.C. Code Ann. § 27-31-40). The Act defines "condominium ownership" as "the individual ownership of a particular apartment in a building and the common right to a share, with other co-owners, in the general and limited common elements of the property." S.C. Code Ann. § 27-31-20(c). The South Carolina Supreme Court has held that members of a condominium association established pursuant to the Act may bring actions against the association for such things as "failing to properly maintain the common elements." Davenport v. Cotton Hope Plantation Horizontal Prop. Regime v. Carson Landscaping Co., Inc., 508 S.E.2d 565, 574 (S.C. 1998) (citing Murphy v. Yacht Cove Homeowners Ass'n, 345 S.E.2d 709 (S.C. 1986)).

2

unit as set forth in the Master Deed. See Master Deed § 3.4 & Ex. B, ECF No. 40-3.

At issue in the instant action is a series of commercial general liability ("CGL") insurance policies (the "Policies") that Plaintiff Auto-Owners Insurance Company ("Auto-Owners") issued to the POA, pursuant to which Auto-Owners agreed to "pay all sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage'" that is "caused by an 'occurrence' that takes place in the 'coverage territory.'" CGL Policy § I, 1(a)&(b), ECF No. 1-1 at 17.[2]  The Policies also include several provisions setting forth specific circumstances under which coverage is expressly excluded; the relevant exclusions are discussed in greater detail infra. The Policies provided coverage for terms of one year each, together running from August 31, 2006 until August 31, 2009. Stipulations of Fact ¶¶ 2, 4, ECF No. 70. The first two Policies were issued in the name of "Madison at Park West POA, Inc. C/O Tarragon Corp." with an associated address in Orlando, Florida. 1st Policy Declarations, ECF No. 1-1 at 1; 2d Policy Declarations, ECF No. 1-2 at 1. The third and last Policy was issued in the name of "Madison at Park West POA, Inc. C/O Community Management Group," with an associated address in Charleston, South Carolina. 3d Policy Declarations, ECF No. 1-3 at 1. Tarragon is also separately listed as an "additional insured" in an endorsement attached to the First and Third Policies. See 1st Policy Add'l Insured Endorsement, ECF No. 1-1 at 4; 3d Policy Add'l Insured Endorsement, ECF No. 1-3 at 4.

Through the State Action, the Homeowners seek damages from Northland Madison at Park

---

[2]  The Policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." CGL Policy § V, 14, ECF No. 1-1 at 35. "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . ; [or l]oss of use of tangible property that is not physically injured." Id. at § V, 18(a)&(b).

3

West LLC ("Northland Madison"), Northland Properties Management, LLC, and Northland Investment Corporation (together, the "Northland Defendants"), Tarragon, and the POA for injuries arising out of alleged "negligence, gross negligence, recklessness, wilfulness, bad faith, breach of warranties, negligent misrepresentations, [and] unfair trade practices" all related to the development, sale, and maintenance of the Property. State Ct. Am. Compl. ¶ 13, ECF No. 1-4 at 5–6. In their complaint, the Homeowners allege, <u>inter alia</u>, that "design and construction defects have resulted in repeated water intrusion into the [Homeowners'] residences, failure of the components of the exterior envelope, failure of the structural system(s), and other consequential damages to the common elements of the [POA] and to the interior of the units." <u>Id.</u> at ¶ 18. The POA timely notified Auto-Owners of the State Action and Auto-Owners agreed to defend the POA, pursuant to a reservation of rights. Compl. ¶¶ 11, 12, ECF No. 1.

Auto-Owners filed this declaratory judgment action on March 30, 2009, seeking a ruling that the Policies do not provide liability insurance coverage in the State Action. The POA filed a counterclaim against Auto-Owners on May 15, 2009 asserting that, if this Court finds that the Policies do not cover the damages alleged in the State Action, the POA is "entitled to reformation of the [P]olicies to cover such damage." Answer & Countercl. ¶ 28, ECF No. 15. On October 23, 2009 Auto-Owners filed a motion for summary judgment and, on November 3, 2009, the Homeowner Defendants filed a cross-motion for summary judgment. Pl.'s Summ J. Mot., ECF No. 40; Homeowner Defs.' Cross-Mot. For Summ. J., ECF No. 43. The Court denied the parties' summary judgment motions on April 23, 2010, finding that "material issues of fact remain[] as to whether, and to what extent, Plaintiff is entitled to provide coverage to Defendants under the CGL policies." Text Order, ECF No. 64. The parties were later able to reach agreement on several of

these issues and, on June 18, 2010, jointly filed stipulations of fact to this effect. See Stipulations of Fact, ECF No. 70. The Court then held an evidentiary hearing at which it heard testimony regarding any remaining issues of material fact, as well as the parties' summations. Most recently, on March 21, 2011, the Court granted Auto-Owners' motion for leave to file post-trial briefing in light of recent developments in South Carolina insurance law. Text Order, ECF No. 89.

This matter is now fully briefed and ripe for decision. Having carefully considered the record in this case, including the papers submitted by the parties and the evidence presented and arguments made at the hearing referenced above, the Court hereby finds and rules as follows.

## II.   APPLICABLE LAW

The Court retains "wide discretion" in deciding whether to issue a declaration regarding the rights and obligations of parties to insurance agreements in an action brought pursuant to the federal Declaratory Judgment Act. Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996); see also 28 U.S.C. § 2201(a) ("[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ."). The Fourth Circuit has "frequently approved the use of federal declaratory judgment actions to resolve disputes over liability insurance coverage, even in advance of judgment against the insured on the underlying claim for which coverage is sought." Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375–76 (4th Cir. 1994) (citing cases) (abrogated in part on other grounds by Wilton v. Seven Falls Co., 515 U.S. 277 (1995)). In deciding whether a declaratory judgment is appropriate, the Court should consider whether the relief requested will "(1) . . . serve a useful purpose in clarifying and settling the legal relations in issue, and (2) . . . terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Aetna Cas.

& Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937).  Furthermore,

> [W]hen an insurer comes to federal court seeking a declaratory judgment on coverage issues while the underlying litigation against its insured is pending in the state courts, considerations of federalism, efficiency, and comity should also figure into the discretionary balance, and may, in certain circumstances, require the federal court to refuse to entertain the action, even when the declaratory relief sought would serve a useful purpose.

Nautilus, 15 F.3d at 376 (citing Mitcheson v. Harris, 995 F.2d 235, 237–41 (4th Cir. 1992)).  After carefully considering the above factors, the Court finds that it is appropriate to issue a declaratory judgment deciding the coverage issues presently before it.

The parties agree that South Carolina law applies to the substantive insurance questions at issue in this dispute.  In South Carolina, insurance policies are contracts subject to the general rules of contract construction.  See B.L.G. Enters., Inc. v. First Fin. Ins. Co., 514 S.E.2d 327, 330 (S.C. 1999) (citing cases).  As such, courts "must give policy language its plain, ordinary, and popular meaning."  Id. (citing Fritz-Pontiac-Cadillac-Buick v. Goforth, 440 S.E.2d 367, 369 (S.C. 1994)).  "[I]f the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend or defeat coverage that was never intended by the parties."  S.C. Farm Bureau Mut. Ins. Co. v. Kennedy, 700 S.E.2d 258, 261 (S.C. Ct. App. 2010) (quoting MGC Mgmt. of Charleston, Inc. v. Kinghorn Ins. Agency, 520 S.E.2d 820, 823 (S.C. Ct. App. 1999)).  However, "if doubt exists as to the extent or fact of coverage," South Carolina courts have long held that "where the clause is one of inclusion it should be broadly construed for the benefit of the insured while in exclusion cases the same clause is given a more restricted interpretation[]."  Buddin v. Nationwide Mut. Ins. Co., 157 S.E.2d 633, 635 (S.C. 1967) (citing Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co., 146 S.E.2d 410, 414 (N.C. 1966)); see also M & M Corp. v. Auto-Owners Ins. Co., 701

S.E.2d 33, 35 (S.C. 2010) ("Policies are construed in favor of coverage, and exclusions in an insurance policy are construed against the insurer.") (citing Buddin, 157 S.E.2d at 635). This does not mean that insurers do not have the right "to limit their liability and to impose conditions on their obligations." S.C. Farm Bureau, 638 S.E.2d at 104 (citing B.L.G. Enters., 514 S.E.2d at 330). They may do so, "provided they are not in contravention of public policy or a statutory prohibition." Id. The insured bears the burden of proving that a claim is covered by a policy, while the insurer bears the burden of establishing exclusions to coverage. Sunex Int'l Inc. v. Travelers Indem. Co., 185 F. Supp. 2d 614, 617 (D.S.C. 2001); Gamble v. Travelers Ins. Co., 160 S.E.2d 523, 525 (S.C. 1968).

### III.  FINDINGS OF FACT & CONCLUSIONS OF LAW

#### A.  Who Qualifies As "An Insured."

As an initial matter, the Court considers whether Northland Madison qualifies as an "insured" under the Policies. Auto-Owners takes the position that Northland Madison does not qualify, while Defendants argue that "Northland Madison" is simply the new name given to Tarragon following the Northland Fund's purchase of Tarragon in December 2007 and, as such, should be covered by the Policies to the same extent. After carefully considering the parties' arguments and the relevant portions of the record, the Court finds that the entity formerly known as Tarragon is the same entity as Northland Madison and, therefore, the latter similarly qualifies as an insured under the Policies.

This conclusion is supported, inter alia, by documents submitted by Northland Madison to the South Carolina Secretary of State's Office, including an affidavit of name change submitted around the time of the sale and purchase of Tarragon by the Northland Fund. Aff. of Name Change, ECF No. 40-7 at 1. Northland Madison also submitted a form amending Tarragon's Articles of Incorporation, pursuant to which the sole amendment was to change the LLC's name from Tarragon

to "Northland Madison at Park West LLC." Am. Articles of Incorporation, ECF No. 40-7 at 3. The Court's finding is further supported by the testimony of William M. Thompson, a Senior Vice President responsible for overseeing Northland's multi-family division. At the hearing held before the Court in July, Mr. Thompson explained that the name of the LLC was changed when Tarragon was acquired, but that it was his understanding that the name was the only change that was made. The entities have the same Tax Identification Number and their operations are the same.

Rather than offer evidence to rebut the above, Auto-Owners argues, first, that Northland Madison cannot qualify as an "insured" under the Policies because the following provision prohibits it:

> Any organization [that an insured] newly acquire[s] or form[s], <u>other than a</u> partnership, joint venture or <u>limited liability company</u>, and over which [an insured] maintain[s] ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.

CGL Policy § II, 4, ECF No. 1-1 at 28 (emphasis added). Thus, because Northland Madison is organized as a LLC, Auto-Owners contends that this provision bars it from coverage.

However, by its terms, this provision applies only to organizations that a named insured "newly acquires or forms." No evidence has been presented that would support a finding that either the POA or Tarragon "acquired" or "formed" Northland Madison. Instead, all of the evidence supports a finding that Tarragon and Northland Madison are, for all meaningful purposes, one and the same. As such, the Court declines to find that the above provision bars Northland Madison from coverage as Tarragon's successor.

Auto-Owners' argument that Tarragon was obligated to notify Auto-Owners of any change in its ownership—and that its failure to do so is fatal to Northland Madison's claims—is similarly

unpersuasive. Auto-Owners have not cited any language in the Policies that provides for a notification requirement or makes it a condition precedent to coverage. Mindful that "[e]xclusions in an insurance policy are to be interpreted narrowly and to the benefit of the insured," Horry County v. Ins. Reserve Fund, 544 S.E.2d 637, 640 (S.C. Ct. App. 2001) (citing McPherson v. Mich. Mut. Ins. Co., 426 S.E.2d 770, 771 (S.C. 1993)), the Court declines to read such a provision into the Policies.

### B.     Exclusions and Limitations.

For the purposes of this declaratory judgment action, the Court assumes, without deciding, that an "occurrence" caused "property damage" within the Policy period and that Auto-Owners could not properly deny coverage on that basis.[3] The issue before the Court is whether, assuming that Defendants can demonstrate that coverage would otherwise be proper, Auto-Owners has shown that certain exclusions would nevertheless serve to relieve it from any obligations to defend or indemnify any of the Defendants in relation to the State Action. Auto-Owners has argued that several exclusions found in the Policies apply and the Court addresses each of these in turn, below.

#### 1.     *The "Owned Property" Exclusion.*

Auto-Owners argues that the Policies' "Owned Property" exclusion operates to bar coverage for the POA, Tarragon and Northland Madison, because the POA "owns" and "uses" the Property's common elements and Tarragon and Northland Madison owned individual units within the property regime during the relevant time period. Pursuant to the Owned Property exclusion, the Policies do

---

[3]  Although in making his summation, Auto-Owners' counsel argued that Defendants had produced no evidence in this proceeding that would support a finding that there had been an "occurrence" that caused "property damage," this matter was never discussed in Auto-Owners' briefing and is not properly before the Court.

9

not cover "'property damage' to . . . [p]roperty [that an insured] own[s], rent[s], occup[ies] or use[s], including any cost or expense incurred by [an insured], or any other person, organization or entity for repair, replacement, enhancement, restoration, or maintenance of such property for any reason . . . ." CGL Policy § I, 2(j)(1), ECF No. 1-1 at 21. Auto-Owners argues that because, pursuant to the Master Deed, the individual condominium owners collectively own the common elements of the Property and the POA's membership is comprised of the individual condominium owners, the POA "owns" the common elements. This theory is based entirely on the Homeowner Defendants' ownership of the common elements; Auto-Owners has presented no evidence that the POA owned or used any part of the Property independent of the collective ownership of its membership. As for Tarragon and Northland Madison, the parties have stipulated that Tarragon owned "individual condominium units, which are the subject of the [State Action], from on or about September 7, 2006 . . . until it sold the Project to [the Northland Fund] on or about December 28, 2007," and that Northland Madison "owned individual condominium units during the policy periods of August 31, 2007 through August 31, 2008[.]" Stipulations of Fact ¶¶ 12, 15, ECF No. 70.

The Court finds that the Owned Property exclusion does not operate to exclude coverage for liabilities incurred by the POA. Auto-Owners' argument that the POA and the individual condominium unit owners are essentially one and the same is inconsistent with the general legal principle that "[a] corporation is not a natural person and maintains a separate and distinct identity apart from its shareholders." Magnum v. Md. Cas. Co., 500 S.E. 2d 125, 127 (S.C. Ct. App. 1998) (citing Costas v. First Fed. Sav. & Loan Ass'n, 321 S.E.2d 51, 56 (S.C. 1984)). The primary case upon which Auto-Owners relies, Queen's Grant Villas Horizontal Property Regimes I-V v. Daniel International Corp., 335 S.E.2d 365 (S.C. 1985), does not hold otherwise. That case held only that

"[a] property regime has standing to bring an action for construction defects in common elements that the regime has the duty to maintain." Id. at 366. Furthermore, to read Queen's Grant as standing for the proposition that a duty to maintain regime property is synonymous to "ownership" or "use" of the same, would be to ignore a critical line in the opinion: "The effect of our opinion is to overrule the Court of Appeals' decision in Dockside Ass'n v. Detyens, [330 S.E.2d 537 (S.C. Ct. App. 1985)], which erroneously stated that a regime has no standing to maintain an action unless it owns the common elements." Id. (emphasis added). As noted above, Auto-Owners has presented no evidence that the POA independently owned or used or any portion of the Property. Furthermore, the Master Deed provides to the contrary: one-hundred percent of the Property's common elements are owned by the 244 individual unit owners in varying percentages of interest per unit. See Master Deed § 3.4, ECF No. 40-3. As such, the Court finds that the Policies' Owned Property exclusion does not apply to the POA.

As for Tarragon's and Northland Madison's ownership of individual units within the relevant time period, the Court finds that the Owned Property exclusion applies, but only to the extent that these Defendants seek coverage for losses that they incurred as a result of damage done to property in which they had an interest because of their ownership of individual units. Therefore, to the extent that Tarragon and/or Northland Madison seek coverage for loss to the common elements of the Property, Auto-Owners is not obligated to cover that loss proportionate to these Defendants' ownership of individual condominium units. However, the fact that Tarragon and/or Northland Madison independently owned some of the Property's condominium units does not excuse Auto-Owners from its duty to defend or provide coverage to these Defendants with regard to loss associated with the proportion of the common elements in which they do not have an ownership

interest. See State Farm Fire & Cas. Co. v. English Cove Ass'n, Inc., 88 P.3d 986, 993–94 (Wash. Ct. App. 2004).

### 2.  *Limitations in the "Additional Insured" Endorsement.*

Auto-Owners further argues that certain limitations found in an endorsement attached to the First Policy relieves it from any obligation to provide coverage to Tarragon or its successor, Northland Madison.[4] The endorsement at issue identifies "Madison at Park West Tarragon LLC C/O Tarragon Corp." as an "additional insured" and provides, in relevant part,

>   **A.**   **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured [Tarragon] . . . , but only with respect to their liability arising out of:
>
>   Their financial control of [an insured]; or
>
>   Premises they own, maintain or control while [an insured] lease[s] or occup[ies] these premises.
>
>   **B.**   This insurance does not apply to structural alterations, new construction and demolition operations performed by or for [Tarragon].

1st Policy Add'l Insured Endorsement, ECF No. 1-1 at 4. Auto-Owners argues that this endorsement excludes coverage for Tarragon for two reasons. First, Auto-Owners argues that, because the POA neither leases nor occupies the premises, Tarragon is not covered. Second, Auto-Owners argues that, because the State Court complaint alleges injuries as a result of Tarragon's developing, building,

---

[4]  Based on the papers filed with the Court, the same endorsement appears to have also been attached to the Third Policy, as well as the First. See 3d Policy Add'l Insured Endorsement, ECF No. 1-3 at 4. Auto-Owners, however, focused its argument only on the endorsement attached to the First Policy. Given the Court's finding, infra, that the endorsement does not serve to bar coverage for either Tarragon or Northland Madison, the Court need not and does not explicitly consider the implications of the endorsement's apparent renewal in connection with the Third Policy.

repairing, and selling of buildings and units, the endorsement's exclusion for structural alterations, new construction and demolition operations serves to foreclose coverage.

The Court finds that the endorsement does not bar Tarragon or its successor Northland Madison from coverage under the Policies. As for Auto-Owners' first argument, the endorsement speaks of coverage "with respect to [Tarragon's] liability arising out of" either Tarragon's "financial control" of an insured or premises that Tarragon owns, maintains, or controls while an insured leases or occupies those premises. Id. The State Action complaint alleges that Tarragon and the Northland Defendants are liable as a result of their control of the POA. See State Ct. Am. Compl. ¶ 2 ("The Developer Defendants are in control of and are the alter ego of The [sic] Board of Directors of [the POA]."), ECF No. 1-4 at 4. Therefore, it sufficiently alleges a basis for coverage under the first of the two alternative grounds for liability set forth in Section A of the endorsement.

As for the endorsement's exclusion for "structural alterations, new construction and demolition operations performed by or for [Tarragon]," because neither the endorsement nor the Policy defines these terms, the court must define them "according to the usual understanding of the term's significance to the ordinary person." State Farm Fire & Cas. Co. v. Barrett, 530 S.E.2d 132, 136 (S.C. Ct. App. 2000). Other courts that have considered the meaning of the term "structural alteration" have generally found it to refer to significant changes to the property's function or appearance. See, e.g., Hardware Mut. Cas. Co. v. Hilderbrandt, 119 F.2d 291, 300 (10th Cir. 1940) ("A structural alteration of a building . . . is one which affects some portion thereof in a vital and substantial manner, and changes its characteristic appearance."); Garrow v. Smith, 603 N.Y.S.2d 635, 636 (N.Y. Ct. App. 1993) ("A structural change or alteration is such a change as affects a vital and substantial portion of the premises, as changes its characteristic appearance, the fundamental

purpose of its erection, or the uses contemplated, or a change of such a nature as affects the very realty itself—extraordinary in scope and effect, or unusual in expenditure."); see also Klumpp v. Rhoads, 200 N.E. 153, 154 (Ill. 1936) (finding "alterations [which] consisted of a cement floor, a toilet, the removal of a tree stump, changing two windows and a door, and painting the building . . . are not contemplated by the legal definition of structural alterations"). Although there are fewer cases available discussing the meaning of the term "new construction," one court noted that an earlier edition of Black's Law Dictionary defined "construction" as the "creation of something new, as distinguished from the repair or improvement of something already existing." LTV Steel Co., Inc. v. Nw. Eng'g & Const., Inc., 845 F.Supp. 1295, 1300 (N.D. Ind. 1994) (citing Black's Law Dictionary 312 (6th ed. 1990). This is consistent with the definitions given to the word "construction" as modified by the adjective "new" in dictionaries of general usage including Webster's New College Dictionary. See Webster's New College II Dictionary 736 (defining "new" as "[c]oming after or taking the place of a previous one or ones"); id. at 242 (defining "construction" when used as "[t]he business of building" or "[s]omething constructed"). Webster's also defines "demolition" as "[t]he act or process of wrecking or destroying," Webster's New College II Dictionary 301 (1995).

  Applying the ordinary meaning of these terms to the circumstances of this case, the Court finds that Auto-Owners has failed to present evidence that Tarragon or Northland Madison engaged in or engaged another to conduct structural alterations, new construction, or demolition operations. To the contrary, at the evidentiary hearing Mr. Thompson testified that all of the work done to the Property in the process of converting it from an apartment to condominium complex was merely "cosmetic," consisting of new light fixtures, new countertops, painting where needed, new carpeting

where needed, new faucets where needed, and grading and sealing the parking lot. At the end of the conversion process the Property had the same footprint. It did not have any new units, nor did the unit configurations change. Nothing was demolished and nothing new was built. The foundation and structural support of the buildings remain the same. The Property continues to function as a residential complex. Accordingly, the Court finds that the endorsement's exclusion for structural alterations, new construction and demolition operations does not operate to bar Tarragon or its successor Northland Madison from coverage.

### 3.     *The "Your Work" Exclusion.*

Finally, Auto-Owners argues that the Policies' "your work" exclusion operates to bar coverage for the claims asserted in the underlying action, because the State Court complaint alleges that Tarragon and the Northland Corporations were "negligent, grossly negligent, careless, reckless, willful and wanton, in developing, building, repairing and selling the buildings and units at issue.'" State Ct. Am. Compl. ¶ 31, ECF No. 1-4 at 9. The relevant Policy language provides that "[t]his insurance does not apply to" "property damage" to either:

> That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on [an insured's] behalf are performing operations, if the "property damage" arises out of those operations; or
>
> * * *
> That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

CGL Policy § I, 2(j)(6)&(7), ECF No. 1-1 at 21. The term "your work" is defined as "[w]ork or operations performed by [an insured] on [the insured's] behalf; and . . . [m]aterials, parts or equipment furnished in connection with such work or operations." Id. at § V, 27(a)(1)&(2). It further includes "[w]arranties or representations made at any time with respect to the fitness, quality,

15

durability, performance or use of 'your work'" and "[t]he providing of or failure to provide warnings or instructions." Id. at § V, 27(b)(1)&(2). In Auto Owners Insurance Co., Inc. v. Newman, 684 S.E.2d 541 (S.C. 2009), the South Carolina Supreme Court found that the exclusion would not bar recovery for a subcontractor's negligent work that damaged other work done by the general contractor, but that the cost to repair the subcontractor's defective work itself would fall within the exclusion.[5] See id. at 546–47.

In the instant case, the Court denied Auto-Owners' motion for summary judgment on this issue, because Auto-Owners failed to produce evidence upon which the Court could find that the "your work" exclusion applies. Neither the subsequently-filed stipulations nor the evidence produced at the hearing has further illuminated the matter. Auto-Owners bears the burden of proving that the exclusion applies and its failure to present any evidence that the work performed on the Property that resulted in the alleged injuries at issue in the State Action was performed by any of the Defendants requires that this Court deny Auto-Owners' request that it issue a declaratory judgment finding the exclusion effective in this case.

---

[5] The continued validity of Newman is currently in some doubt following the South Carolina Supreme Court's decision earlier this year in Crossmann Communities of North Carolina, Inc. v. Harleysville Mutual Insurance Co., No. 26909, 2011 WL 93716 (S.C. 2011), which purported to overrule Newman to the extent that it can be read to find that "where the damage to the insured's property is no more than the natural and probable consequences of faulty workmanship such that the two cannot be distinguished" it may constitute an "occurrence" triggering coverage. Id. at *8. The South Carolina Supreme Court has since granted a motion to rehear Crossmann. As such, it remains to be seen whether Newman will continue to govern future litigation about the "your work" exception.

## IV.   CONCLUSION

For the reasons discussed above, the Court finds as follows:

(1) Northland Madison qualifies as an "insured" to the Policies to the same extent as its predecessor, Tarragon.

(2) Assuming that an "occurrence" that caused "property damage" triggered coverage:

  (a) The "Owned Property" exclusion does not operate to exclude coverage for the POA;

  (b) The "Owned Property" exclusion may be applied to exclude coverage for Tarragon and Northland Madison, but only to the extent that those Defendants seek coverage for losses that they incurred as a result of damage done to property in which they have an ownership interest because of their ownership of individual condominium units within the Property;

  (c) The limitations found in the "additional insured" endorsement do not serve to bar coverage for Tarragon or Northland Madison; and

  (d) Because Auto-Owners failed to present evidence that any of the Defendants or anyone working on Defendants' behalf performed work on the Property that caused the injuries alleged in the State Court complaint, the Court cannot find that the "your work" exception bars coverage in this case.

This decision concludes this action. The Clerk of the Court is hereby directed to close the case.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
United States District Judge

July 6, 2011
Columbia, South Carolina